**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| **GUSTAVO ALBERTO MERINO-LIMA** | **CASE NO. 3:26-CV-02290 SEC P** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **MARKWAYNE MULLIN ET AL** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

# MEMORANDUM RULING

Before the Court is a Complaint for Declaratory and Injunctive Relief [Doc. No. 1] filed by Petitioner Gustavo Alberto Merino-Lima ("Merino-Lima"). The Court previously denied Merino-Lima's motion for preliminary injunction and ordered Respondents to file an answer to Merino-Lima's Complaint [Doc. No. 4]. Respondents complied[1] [Doc. No. 7] and Merino-Lima filed a reply [Doc. No. 11].[2]

For the following reasons, Merino-Lima's Complaint for Declarative and Injunctive Relief is **GRANTED IN PART** and **DENIED IN PART**.

[1] Merino-Lima filed suit against Markwayne Mullin, Todd Blanche, David Venturella, and Brian Acuna, all in their official capacities (collectively, "Respondents"). [Doc. No. 1, p. 1]. However, the Court notes Respondents' responsive brief purports to represent only Immigration and Customs Enforcement, which is not a party in this case, rather than the named Respondent, Todd Blanche, Director of ICE. Moreover, Respondents' brief states it does not represent the Warden of the Pine Prairie ICE Processing Center, an official who is not a party in this matter, and whose facility is not where Merino-Lima was detained prior to his removal. While the Court recognizes the Western District of Louisiana has seen a sharp uptick in immigration detention habeas cases, this increased workload for the United States Attorney's Office does not excuse discrepancies made in Respondents' brief. The Court strongly urges counsel for Respondents to carefully scrutinize the pleadings they file in the future.

[2] The parties did not seek or obtain leave of Court to file their surreplies [Doc. Nos. 13, 15, 16]. "The Federal Rules of Civil Procedure do not expressly provide for the filing of a surreply, thus necessitating parties to file a motion for leave before filing a surreply." *Woolard v. Fluor Enterprises, Inc.*, 10- 3623, 2013 WL 596581, at *4 (S.D. Tex. Feb. 15, 2013). Accordingly, the Court does not consider the surreplies in ruling on the Complaint.

## I. BACKGROUND

Merino-Lima, a native and citizen of Cuba, entered the United States, without inspection or admission, on or about March 5, 2022.[3] Upon entry, immigration authorities apprehended Merino-Lima, placed him in immigration custody, and issued him a Notice To Appear ("NTA") charging him as removable under the Immigration Nationality Act ("INA") § 212(a)(6)(A)(i) (8 U.S.C. § 1182(a)(6)(A)(i)).[4] He was subsequently released on bond pursuant to INA § 236(a) (8 U.S.C. § 1226(a)) on April 19, 2022.[5] While released on bond, he adhered to all terms of his release.[6]

On June 5, 2025, Merino-Lima appeared before the Immigration Court in Miami, Florida, for his master hearing, at which time his removal proceedings were dismissed pursuant to 8 C.F.R. § 239.2(a).[7] Following the conclusion of the master hearing, Immigration and Customs Enforcement ("ICE") officers arrested Merino-Lima outside of the courthouse pursuant to § 1225(b)(1) and placed him in immigration detention in Natchez, Mississippi, where he remained for over eight months.[8]

While detained, Merino-Lima requested a bond hearing, which was denied by the LaSalle Immigration Court in Jena, Louisiana on July 15, 2025.[9] On September 2, 2025, U.S. Citizenship and Immigration Services ("USCIS") interviewed Merino-

---

[3] [Doc. No. 1, ¶¶ 8, 28, 31].
[4] [Id. at ¶ 32].
[5] [Id. at ¶ 34]; [Doc. No. 7-5, p. 20].
[6] [Doc. No. 1, ¶ 35].
[7] [Id. at ¶ 40]; [Doc. No. 7-5, p. 17]; [Doc. No. 7-6, p. 1].
[8] [Doc. No. 1 at ¶¶ 41–43]; [Doc. No. 7, p. 2], [Doc. No. 7-7, p. 9].
[9] [Doc. No. 1, ¶¶ 7, 45]; [Doc. No. 1-1, p. 21].

Lima, pursuant to § 1225(b)(1)(B), and issued an adverse finding.[10] He was subsequently ordered removed pursuant to § 1225(b)(1).[11] The record contains no written Immigration Judge review of the adverse USCIS ruling per § 1225(b)(1)(B)(iii)(III).[12] Merino-Lima submitted a second motion for a bond hearing and custody redetermination on December 9, 2025, which was denied on December 16, 2025.[13] He filed a Petition for Writ of Habeas Corpus in the United States District Court for the Southern District of Mississippi on or about February 17 or 18, 2026.[14]

On February 18, 2026, Respondents removed Merino-Lima "to Cuba without lawful process and in violation of Respondents' own statutes, regulations, and policies."[15]

Merino-Lima seeks a declaratory judgment that Respondents violated the Administrative Procedure Act ("APA") by denying his requests for a bond hearing "despite his prior release on bond; more than three years of full compliance with all government-imposed conditions; his absence of any criminal history; his approved Form I-130 immigrant petition; and his wife and minor U.S. citizen child residing in Florida."[16] Specifically, Merino-Lima asserts the denial of his bond request without judicial review "constitutes agency action that is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law under" the APA, 5 U.S.C.

---

[10] [Doc. No. 7, p. 2]; Doc. No. 7-7, pp. 1–2].
[11] [Doc. No. 7-7, p. 3].
[12] [Doc. No. 7, p. 3].
[13] [Doc. No. 1 at ¶ 46]; [Doc. No. 1-1, p. 29].
[14] [Id. at ¶ 49].
[15] [Doc. No. 1, ¶¶ 8, 56].
[16] [Id. at pp. 21–22].

§ 706(2)(A).[17]. Merino-Lima further contends that his removal was unlawful due to Respondents' violations of the APA, governing immigration statutes and regulations, the *Accardi* doctrine, and the Due Process Clause of the Fifth Amendment.[18] In addition to his request for declaratory relief, Merino-Lima seeks a permanent injunction compelling Respondents to facilitate his return to the United States.[19]

In response, Respondents concede the record contains "no written Immigration Judge review of the adverse USCIS ruling per 8 U.S.C. §1225(b)(1)(B)(iii)(III)."[20] Nevertheless, they maintain that injunctive relief should be denied as the statutorily mandated review "may occur in person, via telephone or via video conference per the statute," and therefore "Petitioner could remain undetained in his native country and participate in this review from Cuba."[21]

The issues are fully briefed, and the Court is ready to rule.

## II. Relevant Legal Standards

### A. Removal Proceedings Dismissal

During Merino-Lima's master hearing before the Miami Immigration Court, the Immigration Judge granted the Department of Homeland Security's motion to dismiss pursuant to 8 C.F.R. § 239.2(a).[22] Section 239 governs the initiation of removal proceedings, and subsection 239.2 details the process of cancelling an alien's NTA. 8 C.F.R. § 239.2. Once removal proceedings commence, ICE counsel "may move

---

[17] [Id. at ¶ 65].
[18] [Doc. No. 1, pp. 15-21].
[19] [Id. at 2].
[20] [Doc. No. 7, p. 3].
[21] [Id.].
[22] [Doc. No. 7-6].

for dismissal of the matter on the grounds set out under [8 C.F.R. § 239.2(a)]." *Id.* § 239.2(c). An immigration judge may grant the motion to dismiss if satisfied that one of the following conditions is met:

> (1) The respondent is a national of the United States;
> (2) The respondent is not deportable or inadmissible under immigration laws;
> (3) The respondent is deceased;
> (4) The respondent is not in the United States;
> (5) The notice was issued for the respondent's failure to file a timely petition as required by section 216(c) of the Act, but his or her failure to file a timely petition was excused in accordance with section 216(d)(2)(B) of the Act;
> (6) The notice to appear was improvidently issued, or
> (7) Circumstances of the case have changed after the notice to appear was issued to such an extent that continuation is no longer in the best interest of the government.

*Id.* § 239.2(a).

### B. Expedited Removal Authority

As stated above, Merino-Lima was placed in expedited removal proceedings under § 1225(b)(1) on June 5, 2025.[23] The expedited removal process begins with an interview by an immigration officer. At the interview, the officer must advise the alien of the charges against them and allow the alien to respond via a sworn statement. 8 C.F.R. § 235.3(b)(2)(i). If needed, the officer must provide the alien with an interpreter. *Id.* If the officer finds that the alien is inadmissible and no exception applies, the officer must "order the alien removed" without a hearing before an immigration judge and ordinary administrative review. 8 U.S.C. § 1225(b)(1)(A)(i).

[23] [Doc. No. 7, p. 2]; [Doc. No. 7-7, p. 9].

The expedited removal order becomes final only after it is "reviewed by [a] supervisor." 8 C.F.R. § 235.3(b)(7).

If, during the initial interview, an alien expresses that they (1) want to apply for asylum or (2) fear persecution at home, the immigration officer must refer the alien to an asylum officer for a "credible fear" interview. 8 U.S.C. § 1225(b)(1)(A)(ii). At the non-adversarial credible fear interview, the asylum officer must determine if there is "a significant possibility . . . that the alien could establish eligibility for asylum" or related protection. *Id.* § 1225(b)(1)(B)(v). If the asylum officer finds the alien cannot meet that burden, "the officer shall order the alien removed[.]" *Id.* § 1225(b)(1)(B)(iii)(I). Again, a supervisor must review the asylum officer's decision before it becomes final. 8 C.F.R. § 235.3(b)(7). If the supervisor agrees, aliens may ask an immigration judge to review that finding *de novo*. 8 U.S.C. § 1225(b)(1)(B)(iii)(III); 8 C.F.R. § 1003.42(c). If the immigration judge also agrees, the expedited removal order becomes final. 8 C.F.R. § 1003.42(f)(2). If credible fear is found at any stage, the alien is referred to USCIS, so that they review the alien's asylum application. 8 U.S.C. § 1225(b)(1)(B)(ii).

Aliens in expedited removal must "be detained pending a final determination of credible fear of persecution [or] until removed." *Id.* § 1225(b)(1)(B)(iii)(IV).

### C. Requirements for Injunctive Relief

"A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." *Munaf v. Green*, 553 U.S. 674, 689–90 (2008) (internal citations and quotations omitted); *see Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985) (calling it "the exception rather than the rule"). A

party seeking a preliminary injunction under Rule 65 must show: (i) a substantial likelihood of success on the merits; (ii) that the movant will suffer irreparable injury without the injunction; (iii) that the threatened injury to the movant outweighs the threatened harm to the party whom he seeks to enjoin; and (iv) that granting the injunction will not disserve the public interest. *Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir. 1991). The decision to grant an injunction is "an extraordinary remedy and should be granted only if the movant has clearly carried the burden of persuasion with respect to all four factors." *Allied Mktg. Group, Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989).

For the first factor, the moving party must show that it will "likely prove" the merits of its claims. *Mylan Institutional LLC v. Aurobindo Pharma Ltd.*, 857 F.3d 858, 866 (5th Cir. 2017). To prove the second factor, the moving party must show a likelihood of harm, not a mere possibility of it. *Romac Env't Servs. LLC v. Wildcat Fluids LLC*, No. 20-CV-581, 2022 WL 421416, at *3 (W.D La. 2022) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (internal citations omitted)). The third factor requires the Court to use a balancing test in determining the harm that would be suffered by the movants if the injunction were denied against the harm caused to the opposing party if the injunction were granted. *Miss. Power & Light Co.*, 760 F.2d at 626. The fourth factor requires the Court to determine whether granting the injunctive relief will disserve the public interest. *Id.* at 625–26.

### D. APA

The APA governs judicial review of administrative adjudications. Under the APA, any person "adversely affected or aggrieved by agency action" is entitled to

judicial review of agency "action made reviewable by statute and final agency action for which there is no other adequate remedy." 5 U.S.C. §§ 702, 704.

While the reviewing court must "give the agency the benefit of the doubt as to the meaning of its regulation." Section 706(2)(A) authorizes reviewing courts to "hold unlawful and set aside" agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Id.* § 706(2)(A); *see also Allentown Mack Sales & Serv., Inc. v. N.L.R.B.*, 522 U.S. 359, 377 (1998).

## III. ANALYSIS

Merino-Lima brings five claims against Respondents. The Court will address each in turn.

### A. Claim One

Merino-Lima's first claim argues Respondents' refusal to provide a bond hearing or individualized review before a neutral adjudicator violates § 706(2)(A) of the APA.[24] Merino-Lima was placed in expedited removal proceedings under § 1225(b)(1) on June 5, 2023.[25] Aliens who are subject to removal under § 1225(b)(1) are to be "removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum ... or a fear of persecution." *Id.* § 1225(b)(1)(A)(i). These removal proceedings are considered "expedited removal" proceedings because the alien is to be removed "without further hearing or review." Id. This "without further hearing or review" includes bond hearings. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (quoting *Jennings v. Rodriguez*, 583 U.S. 281,

[24] [Doc. No. 1, ¶¶ 64–65].
[25] [Doc. No. 7, p. 2], [Doc. No. 7-7, p. 9].

297 (2018)) ("[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings."); *see also Sandoval v. Acuna*, 25-1467, 2025 WL 3048926 at *4 (Oct. 31, 2025) (Section 1225(b)(1) "mandate[s] detention throughout the pendency of the removal proceedings."). As such, Merino-Lima cannot prove a substantial likelihood of success on the merits, the first factor required for injunctive relief under Rule 65, because the statute governing his detention does not afford aliens bond hearings. Fed. R. Civ. P. 65(a); *Lakedreams*, 932 F.2d at 1107. Accordingly, this claim is **DENIED**.

### B. Second Claim

Merino-Lima's second claim asserts Respondents failure to provide judicial review prior to removing him as required by § 1225(b)(1)(B)(iii)(III) "is contrary to the clear language of the governing statutes and regulations, is arbitrary and capricious, and constitutes an abuse of discretion under 5 U.S.C. § 706(2)(A)."[26] Respondents state Merino-Lima was afforded the opportunity to participate in a credible fear interview, and the USCIS interviewed Petitioner pursuant to § 1225(b)(1)(B) and issued an adverse finding.[27] He was subsequently ordered removed pursuant to § 1225(b)(1).[28] Respondents concede the record contains no written Immigration Judge review of the adverse USCIS ruling per § 1225(b)(1)(B)(iii)(III).[29]

Under the *Accardi* doctrine, a federal agency must follow its own binding regulations and procedures. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). "Where the rights of individuals are affected, it is incumbent upon

[26] [Doc. No. 1, ¶ 72]; [Doc. No. 11, p. 10].
[27] [Doc. No. 7, p. 2]; [Doc. No. 7-7, pp. 1–2].
[28] [Doc. No. 7-7, p. 3].
[29] [Doc. No. 7, p. 3].

agencies to follow their own procedures." *Morton v. Ruiz*, 415 U.S. 199, 235 (1974). An agency must have failed to perform a non-discretionary duty to act. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). Here, judicial review of a negative credible fear determination is statutorily mandated under § 1225(b)(1)(B)(iii)(III). Where an asylum officer finds no credible fear, an alien may request review by an immigration judge, and the statute commands that "[r]eview shall be concluded as expeditiously as possible . . . but in no case later than 7 days after the date of the determination." 8 U.S.C. § 1225(b)(1)(B)(iii)(III). Because that review never occurred, Respondents failed to perform a non-discretionary statutory duty. Respondents' actions were therefore contrary to law, arbitrary, capricious, and an abuse of discretion under § 706(2)(A).

Now, the Court turns to Merino-Lima's requested relief. Merino-Lima requests the Court to order Respondents to facilitate his return to the United States.[30] Respondents argue this relief is unnecessary because "Immigration Judge review per § 1225(b)(1)(B)(iii)(III) may occur in person, via telephone or via videoconference per the statute."[31]

The APA allows courts to compel agency action "unlawfully withheld" under narrow circumstances. 5 U.S.C. § 706(1). Merino-Lima asserts authority for the Court to order his return is found under the Supreme Court's decision in *Noem v. Abrego Garcia*, 145 S. Ct. 1017 (2025). In *Abrego Garcia*, Petitioner Abrego Garcia was granted withholding order forbidding his removal to El Salvador. 145 S. Ct. at 1018.

[30] [Doc. No. 1, ¶ 6].
[31] [Doc. No. 7, p. 3].

Petitioner was later removed to El Salvador, which the Supreme Court ruled was in direct violation of Petitioner's removal order. *Id.* In order to correct this wrong, the Supreme Court upheld the district court's order requiring the "Government to 'facilitate' Abrego Garcia's release from custody in El Salvador and to ensure that his case is handled as it would have been had he not been improperly sent to El Salvador." *Id.*

The Court finds *Abrego Garcia* does not apply to the case at hand because Merino-Lima did not have a withholding order forbidding his removal to Cuba. Therefore, to remedy the specific procedural violation in this case—Respondents' failure to provide judicial review of Merino-Lima's negative credible fear determination—Respondents need only provide that judicial review per § 1225(b)(1)(B)(iii)(III). As Respondents correctly note, this review "may occur in person, via telephone or via videoconference per the statute."[32] This approach is consistent with ICE policy, which states "ICE will facilitate [an alien's] return to the United States if [his] prescence is necessary for continued adjudication of [his] case," but "ICE may explore other options in lieu of facilitating [an alien's] return, such as arranging for video teleconferencing or telephonic testimony." U.S. Immigr. & Customs Enf't, *Policy Directive 11061.1: Facilitating the Return to the United States of Certain Lawfully Removed Aliens* (Feb. 24, 2012).[33] Accordingly, Merino-Lima's

---

[32] [Id.].

[33] https://www.ice.gov/doclib/foia/policy/directive11061.1_FAQ_FacilitateReturnLawfullyRemovedAliens.pdf

second claim is **GRANTED** and Respondents are ordered to conduct a judicial review per § 1225(b)(1)(B)(iii)(III) via telephone or videoconference.

### C. Third Claim

Merino-Lima's third claim argues Respondents violated his right to procedural due process by removing him without prior notice and failing to provide a "hearing at which a neutral adjudicator assessed flight risk, dangerousness, or the necessity of continued detention."[34] The Court is not convinced. Section 1225(b)(1) does not require pre-removal notice, *see* 8 U.S.C. § 1225, and Merino-Lima offers no case law or statutory authority to the contrary. Furthermore, as analyzed in greater detail under the first claim, Merino-Lima did not have a right to a bond hearing under § 1225(b)(1). Accordingly, Merino-Lima's third claim is **DENIED**.

### D. Fourth Claim

Merino-Lima's fourth claim asserts Respondents violated the *Accardi* doctrine through their failure to follow their own binding regulations.[35] Specifically, Merino-Lima maintains his arrest without prior notice or a warrant renders Respondents actions "unlawful under the Accardi doctrine and are properly remedied as arbitrary, capricious, and contrary to law under the APA."[36] The Court is unpersuaded.

The Court finds Merino-Lima's arrest was lawful as he was arrested in accordance with the notice and order of expedited removal issued on June 5, 2025.[37] The notice and order of expedited removal stated Merino-Lima was inadmissible and

[34] [Doc. No. 1, ¶ 77].
[35] [Id. at ¶¶ 81–84].
[36] [Id.].
[37] [Doc. No. 7-7, p. 9].

ordered removed pursuant to § 1225(b)(1).[38] Unlike standard removal procedures that provide a NTA to aliens in removal proceedings under § 1229(a) and a formal hearing before an immigration judge under § 1229a, aliens subject to § 1225(b)(1) are not entitled to pre-arrest notice or a warrant as a matter of right. *Compare* 8 U.S.C. §§ 1229a; 1229(a), *with id.* § 1225(b)(1). Because Merino-Lima's arrest conformed to the governing statutory and regulatory framework, no *Accardi* violation occurred and Merino-Lima's fourth claim is also **DENIED**.

### E. Fifth Claim

In the alternative to Merino-Lima's APA claims, his fifth claim seeks mandamus relief under § 1361, which authorizes the Court "to compel an officer or agency of the United States or any agency thereof to perform a duty owed to the plaintiff."[39] 28 U.S.C. § 1361. Considering the Court's ruling on Merino-Lima's primary claim for violation of the APA, the Court declines to consider Merino-Lima's mandamus relief claim plead in the alternative. Accordingly, Merino-Lima's fifth claim is **DENIED**.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED**, **ADJUDGED**, **AND DECREED** that Merino-Lima's Complaint for Declaratory and Injunctive Relief [Doc. No. 1] is **GRANTED IN PART** and **DENIED IN PART**.

---

38 [Id.].

39 [Doc. No. 1, ¶ 86].

**IT IS ORDERED**, **ADJUDGED**, **AND DECREED** that Merino-Lima's Complaint is **GRANTED** as to Claim Two.

**IT IS FURTHER ORDERED** that Respondents conduct a judicial review per 8 U.S.C. §1225(b)(1)(B)(iii)(III) via telephone or videoconference within seven (7) days of this Ruling's filing. Respondents shall, within 24 hours after Zoom, file a status report confirming Zoom occurred.

**IT IS FURTHER ORDERED**, **ADJUDGED**, **AND DECREED** that Merino-Lima's remaining claims are **DENIED** and **DISMISSED WITH PREJUDICE**.

MONROE, LOUISIANA, this 21st day of August 2026.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE